FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 11, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEANETTE HOTES-APRATO, Personal Representative of the Estate of Robert John Aprato, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>ACI NORTHWEST, INC., an Idaho corporation,<br><br>Defendant. | NO: 2:19-CV-200-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff Personal Representative Jeanette Hotes-Aprato's Motion for Partial Summary Judgment regarding Subcontractor Liability, ECF No. 38. Having reviewed the parties' filings, the remaining docket, and the relevant law, and having heard oral argument, the Court is fully informed.[1]

/ / /

/ / /

---

[1] The Court also reviewed the May 21, 2020 letter submitted after oral argument by Defendant ACI Northwest, Inc. ECF No. 51.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

# BACKGROUND

The following facts are undisputed for purposes of the partial summary judgment motion, unless otherwise noted. During the relevant timeframe, Crown Resources-Kettle River Operations ("Crown Resources") owned and operated the Buckhorn Mine, an underground gold ore operation located in Okanogan County, Washington. ECF Nos. 40-1 at 4; 42 at 1–2. The U.S. Department of Labor—Mine and Safety Health Administration (the "MSHA") regulated the mine. ECF No. 43 at 2.

The first 8.7 miles of the haul road from the mine entrance consist of a two-lane gravel road called Forest Service Road 3550 ("FSR 3550"), passing over U.S. Forest Service land. ECF Nos. 43 at 2–3; 48 at 10–11. Crown Resources entered into contracts with ACI to maintain FSR 3550 and to haul ore. ECF Nos. 43 at 2; 48 at 2. In the "Haul Road Maintenance and Service Agreement," ACI was named as Crown Resources' "Contractor" for daily maintenance of the haul road. ECF No. 43-2 at 2, 11. The second contract, the "Transportation and Service Agreement," between Crown Resources and ACI designated ACI as the "Carrier" responsible for, in relevant part, transporting ore from the Buckhorn Mine, as well as other mining operations owned by Crown Resources. ECF No. 43-1 at 2.

The Transportation and Service contract between Crown Resources and ACI requires ACI to "maintain, at its sole cost and expense, safe and adequate service, equipment and facilities . . . and shall maintain all such equipment in good repair and

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

condition." ECF No. 43-1 at 2. The contract also specifies that ACI "will be required to comply with all operational requirements as they relate to [the Mine Safety and Health Act] (training plan, documentation, pre-op checks, etc.)." *Id.* at 4. The contract provides that ACI "shall control all means and methods of performing under this Agreement . . . ." *Id.* at 14. Further, ACI "agrees to and does accept exclusive responsibility, supervision, control and liability with respect to its employment of any and all persons in the performance of this Agreement, including employment of approved subcontractors." *Id.*

The parties dispute whether ACI was the general contractor under either contract. *See* ECF Nos. 42 at 2; 48 at 2−3. Plaintiff highlights that, during his deposition in this litigation, ACI Project Manager Scott Sullens responded in the affirmative when asked whether it was "fair" to call ACI a "general contractor" for hauling and road maintenance. ECF No. 44 at 2. Defendant submitted a declaration from Mr. Sullens adding:

> When I agreed that ACI could be considered a "general contractor" for certain work, I did not mean that ACI had supervisory authority that general contractors have, for example, on construction sites. Instead, I meant that ACI could be considered the lead entity for that certain work.

*Id.*

ACI subcontracted with Giddings Excavation, LLC ("Giddings"), located in Republic, Washington, to provide one truck, including one driver, to assist in hauling ore. ECF Nos. 40-1 at 4; 43-3 at 3.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

On December 21, 2016, Robert John Aprato, Jr. was working at the Buckhorn Mine driving a dump truck from the mine to the mill. ECF Nos. 40-1 at 4; 48 at 4. Mr. Aprato began driving the truck down the mountain on FSR 3550 to the mill when the brakes failed. ECF No. 48 at 4. Mr. Aprato was heard over the radio calling "no brakes, no brakes." ECF Nos. 42 at 3; 48 at 4. The truck careened down a 20-foot embankment to the roadway below. ECF No. 48 at 5. Mr. Aprato sustained a head injury in the wreck and died on December 24, 2016. *Id.*

The parties dispute the condition of the road at the time of Mr. Aprato's accident, with Plaintiff maintaining that the road was "packed snow and ice" and Defendant offering photos from the morning after the accident showing the condition of the road as "paved and sanded." ECF Nos. 42 at 3, 48 at 4. ACI includes in its opposition to partial summary judgment an expert report that states that, more probably than not, Mr. Aprato would have detected brake defects on the truck had he performed pre-trip and post-trip inspections. ECF No. 46-4 at 3−4. ACI's expert report further asserts that Mr. Aprato was required to perform pre- and post-trip inspections as a commercial driver's license holder pursuant to U.S. Department of Transportation regulations. *Id.*; *see also* ECF No. 48 at 11−13.

A "private citizen" notified the MSHA of Mr. Aprato's death on January 3, 2017, and the agency began to investigate the same day. ECF Nos. 40-1 at 5; 48 at 6. On February 23, 2017, the MSHA issued two citations to ACI for failing to comply with applicable federal regulations governing the control and maintenance of

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

the dump truck. ECF No. 40-1 at 7−8. The MSHA also issued citations to Giddings for failing to comply with the same federal regulations. *Id.* at 8−9.

On January 15, 2019, the Washington state court appointed Mr. Aprato's sister, Jeanette Hotes-Aprato, to serve as the personal representative for Mr. Aprato's estate. ECF No. 48 at 6. In her representative capacity, Ms. Hotes-Aprato filed a wrongful death action in state court on February 13, 2019. ECF No. 2-1. Defendant removed the matter to the United States District Court for the Western District of Washington, based on diversity jurisdiction, on February 25, 2019, ECF Nos. 1 and 2, and that court granted a motion by Defendant to transfer venue to this District on May 20, 2019. The matter was transferred on June 5, 2019. ECF No. 22.

## SUMMARY JUDGMENT STANDARD

Summary judgment serves "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323−24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1      "[A] party seeking summary judgment always bears the initial responsibility

2 of informing the district court of the basis for its motion and identifying those

3 portions of [the record] which it believes demonstrate the absence of a genuine issue

4 of material fact." *Celotex*, 477 U.S. at 323.  Parties opposing summary judgment are

5 must cite to "particular parts of materials in the record" establishing a genuine

6 dispute or show why the materials cited do not establish either the absence or

7 presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).  "[T]here is no issue for trial

8 unless there is sufficient evidence favoring the non-moving party for a jury to return

9 a verdict for that party. If the evidence is merely colorable or if not significantly

10 probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50

11 (internal citations omitted).  "Conclusory allegations unsupported by factual data

12 cannot defeat summary judgment." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d

13 1074, 1078 (9th Cir. 2003).

## DISCUSSION

15      Plaintiff seeks partial summary judgment on the issue of ACI's liability for

16 Giddings' negligence, as a matter of law and if the elements other than duty are

17 proven at trial, on the basis of two grounds of vicarious liability and two grounds of

18 direct liability.  ECF Nos. 38 at 5; 47 at 3.  Plaintiff relies on the Washington

19 Supreme Court's opinion in *Vargas v. Inland Washington, LLC*, 194 Wn.2d 720

20 (Wash. 2019), to support her four theories of recovery.  *See* ECF No. 47 at 2.

21

Defendant counters that the *Vargas* decision is irrelevant to the claim in this case because *Vargas* and the caselaw it relies on "assume a traditional hierarchy of a jobsite owner, a general contractor, and subcontractors." ECF No. 41 at 13. Defendant argues that direct liability, "a claim that the general contractor violated a duty owed directly to the subcontractor's employee[,]" is inapplicable to this case and not raised by Plaintiff's motion. ECF No. 41 at 2. Defendant also rejects that ACI could be vicariously liable for breach of a nondelegable duty because "Plaintiff presents no evidence—nor does she allege—that ACI delegated a nondelegable duty." *Id.*

With respect to a control-based theory of vicarious liability, Defendant argues that Plaintiff is asking the Court "to create new Washington state common law" given that "(1) the accident occurred on a road owned by the U.S. Forest Service and maintained for public use; (2) the accident was investigated by the federal Mine Safety and Health Administration (MSHA) and not a state entity (such as the Washington Department of Labor & Industries (L&I); and (3) the decedent and his employer were subject to regulations by yet another federal agency, the U.S. Department of Transportation." *Id.* at 3. Defendant argues that these "stark differences" support distinguishing this matter from the holding and reasoning of *Vargas*, 194 Wn.2d 720. ECF No. 41 at 3, 7.

A negligence action and a wrongful death action based on negligence require a plaintiff "to establish the existence of a duty, breach, resulting injury, and

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

proximate cause between the breach and the injury." *Jiggens v. Batten*, No. 53595-1-I, 2005 Wash. App. LEXIS 91, at *4 (Ct. App. Jan. 18, 2005) (quoting *Reynolds v. Hicks*, 134 Wn.2d 491, 495 (1998)).  Plaintiff moves for partial summary judgment on the duty element, the threshold question in a negligence action. *Taylor v. Stevens Cty.*, 111 Wn.2d 159, 163 (Wash. 1988); *see* ECF No. 38.  Whether there is a duty owed by a defendant presents a question of law.  *Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 275 (Wash. 1999).

Federal courts exercising diversity jurisdiction, as this Court is, must apply state substantive law. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1934).

In *Vargas*, the plaintiff was severely injured when he was hit in the head by a concrete hose while working on a parking garage construction project.  194 Wn.2d at 723.  Plaintiff Vargas was employed by the concrete subcontractor on the project, and he sued the general contractor on the grounds of direct liability, for breaching its common law duty to provide a safe workplace and violation of the Washington Industrial Safety and Health Act, and of vicarious liability for the subcontractor's negligence.  *Id.*  The trial court granted summary judgment to the general contractor, and the Supreme Court reversed on a finding that genuine issues of material fact persisted as to whether the general contractor was directly liable for Vargas's injury and whether the general contractor was vicariously liable for the subcontractor's negligence, if any. *Id.* at 744.  The *Vargas* opinion addresses direct liability based on two duties owed by a general contractor to a subcontractor's

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

employees, as well as two theories of vicarious liability for a general contractor vicarious liability based on a subcontractor's negligence.

<u>Direct Liability</u>

The Washington Supreme Court rested its decision in *Vargas* that a general contractor can be directly liable under the common law for the injuries of an employee of a subcontractor on its "broad" holding in *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323 (1978). 194 Wn.2d at 733. The *Vargas* decision recites that, based on *Kelley*, "when a general contractor engages a subcontractor and 'retains control over some part of the work,' the general contractor 'has a duty, within the scope of that control, to provide a safe place of work.'" *Vargas*, 194 Wn.2d at 731 (quoting *Kelley*, 90 Wn.2d at 330). "'The test of control is not the actual interference with the work of the subcontractor, but the right to exercise such control.'" *Vargas*, 194 Wn.2d at 731 (quoting *Kelley*, 90 Wn.2d at 330−31). "A general contractor's 'general supervisory functions are sufficient to establish control.'" *Vargas*, 194 Wn.2d at 731 (quoting *Kelley*, 90 Wn.2d at 331).

Having reviewed the Washington state caselaw upon which Plaintiff relies, the Court does not find the distinctions to be persuasive that Defendant attempts to draw between the instant case and a "traditional hierarchy of a jobsite owner, a general contractor, and subcontractors." ACI was contractually obligated, in its agreement with Crown Resources, to "maintain, at its sole cost and expense, safe and adequate service, equipment and facilities . . . and shall maintain all such

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

1  equipment in good repair and condition." ECF No. 43-1 at 2.  The contract also
2  requires ACI "to comply with all operational requirements as they relate to [the
3  Mine Safety and Health Act] (training plan, documentation, pre-op checks, etc.)."
4  *Id.* at 4.  The contract provides that ACI "shall control all means and methods of
5  performing under this Agreement . . . ." *Id.* at 14.  Further, ACI "agrees to and does
6  accept exclusive responsibility, supervision, control and liability with respect to its
7  employment of any and all persons in the performance of this Agreement, including
8  employment of approved subcontractors." *Id.*

9      Regardless of whether Crown Resources owned the mine where Mr. Aprato
10 loaded the dump truck or whether the portion of the haul road on which Mr.
11 Aprato's accident occurred was a public use road over U.S. Forest Service land, Mr.
12 Aprato's job site was the dump truck on its route from the mine to the mill.  The
13 quoted language from the contract between ACI and Crown Resources
14 unambiguously provides that ACI retained "'general supervisory functions . . .
15 sufficient to establish control,'" *Vargas*, 194 Wn.2d at 731 (quoting *Kelley*, 90
16 Wn.2d at 331).  Therefore, the Court finds that pursuant to that control, ACI can be
17 held liable as a matter of law for the accident.  Plaintiff is entitled to partial summary
18 judgment that Defendant owed a common law duty to Mr. Aprato to "provide a safe
19 place to work." *See Vargas*, 194 Wn.2d at 734.

20      The *Vargas* decision further held that direct liability may be premised on a
21 general contractor's "statutory duty to provide a safe place to work." 194 Wn.2d at

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

735. The *Vargas* court relied on the Washington Supreme Court's earlier holding in *Stute v. P.C.M.C., Inc.*, 114 Wn.2d 454, 457−58, 460 (1990) that the Washington Industrial Safety and Health Act ("WISHA") creates such a duty to "all employees working on the premises," whether employees of the general contractor or of a subcontractor. *Id.* Therefore, in *Vargas*, the Washington Supreme Court held that for direct liability based on a specific duty set forth in WISHA, "no analysis of whether the general contractor retained control is necessary." *Id.* at 736.

The *Vargas* discussion of a statutory duty to provide a safe work environment is limited to WISHA. Plaintiff extrapolates from *Vargas* that the federal Mine Safety and Health Act similarly "creates liability for any entity that 'operates, controls, or supervises a coal or other mine.'" ECF No. 38 at 8 (quoting *Ames Const., Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 676 F.3d 1109, 1110−11 (D.C. Cir. 2012)). However, the Court does not find that the matter of whether a general contractor owes a duty directly to its subcontractor's employees under the Mine Safety and Health Act is settled in Washington state law. *Vargas* addresses a state statute, WISHA, and Plaintiff argues that "the same reasoning" applies to ACI's duties under the Mine Safety and Health Act. However, Plaintiff does not cite the Court to caselaw supporting that Defendant owes a duty directly to a subcontractor's employee under the Mine Safety and Health Act. *See* ECF No. 38 at 8. The Court declines to span the gap between *Vargas* and the Mine Safety and

Health Act. Therefore, the Court does not find that partial summary judgment for Plaintiff is warranted on the issue of a statutory basis for Defendant's direct liability.

### Vicarious Liability

*Vargas* also set forth two theories of vicarious liability and found that the defendant general contractor in that matter owed a duty to plaintiff on those bases, in addition to the direct liability theories. First, the *Vargas* decision concluded that "a general contractor is vicariously liable for the negligence of any entity over which it exercises control." 194 Wn.2d at 741. According to the plain language of the contract quoted above, Defendant had a general supervisory function with respect to the transportation of ore by its own employees or those of a subcontractor. Therefore, Defendant retained sufficient control to face vicarious liability, if Plaintiff proves breach, causation, and damages at the time of trial. *See Vargas*, 194 Wn.2d at 740−41.

Lastly, *Vargas* held that "a general contractor that delegates its statutory duty to comply with WISHA is 'vicariously liable for the negligence of the entity subject to its delegation.'" 194 Wn.2d at 738 (quoting *Afoa v. Port of Seattle*, 191 Wash. 2d 110, 124 (2018)).

Plaintiff does not refer the Court to any concrete support in the record for the delegation of a duty to comply with the relevant statutory or regulatory duties. In addition, as the Court discussed above, there is not firm support in *Vargas* or other authority offered by Plaintiff, to extend the holdings of *Vargas* that were particular

to Washington statutes and regulations to safety regulations promulgated under the federal Mine Safety and Health Act. Therefore, the Court denies Plaintiff's partial summary judgment motion with respect to delegation-based liability.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Partial Summary Judgment, **ECF No. 38**, is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

2. Defendant ACI shall be liable for non-party Giddings' negligence, if proven to a factfinder, as a matter of law based on a common law theory of direct liability and a control theory of vicarious liability.

3. Because this Order resolves only one element of Plaintiff's wrongful death claim, no judgment shall be entered at this time.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** August 11, 2020.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 13